IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPHINE GONZALEZ,

      Plaintiff,

  v.                                                                  1:17-cv-01096-LF

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Josephine Gonzalez's Motion to Reverse or Remand (Doc. 20), which was fully briefed on October 8, 2018. Docs. 22, 24, 25, 26,[1] 29. The parties consented to my entering final judgment in this case. Doc. 19. Having meticulously reviewed the record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to properly develop the record as to whether Ms. Gonzalez had been diagnosed with fibromyalgia. The Court therefore GRANTS Ms. Gonzalez's motion and remands this case for further proceedings.

### I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Ms. Gonzalez filed her reply and notice of completion out of time without the Court's permission. *See* Docs. 24, 25. Ms. Gonzalez then re-filed her reply with the Court's permission. *See* Docs. 26, 27. The two replies filed by Ms. Gonzalez are identical. *Compare* Doc. 24 *with* 26.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1581, as it is in this case.

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotations and citations omitted ) (brackets in original).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*.

### III. Background and Procedural History

Ms. Gonzalez is a 58-year-old married woman who lives with her husband and adult daughter. AR 37, 38, 203–04, 207.[4] Ms. Gonzalez's husband works. AR 37. Her adult daughter is disabled, and Ms. Gonzalez assists in the care of her daughter. AR 38, 46. Ms.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 14-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

3

Gonzalez has a history of working as a hand packer, inspector, and customer service representative. AR 53–54, 238.

Ms. Gonzalez filed applications for Disability Insurance Benefits on June 10, 2014, and Supplemental Security Income on July 26, 2014,[5] alleging disability beginning February 6, 2014, due to fibromyalgia, asthma, osteoporosis, and arthritis. AR 192, 203–13, 236. The Social Security Administration ("SSA") denied her claims initially and on reconsideration. AR 59–131, 136–41. Ms. Gonzalez requested a hearing on April 17, 2015. AR 142–49. On November 8, 2016, ALJ James R. Linehan held a hearing, at which Ms. Gonzalez and a vocational expert ("VE") testified. AR 34–58. Ms. Gonzalez appeared at the hearing with counsel. AR 34, 36. ALJ Linehan issued his unfavorable decision on December 1, 2016. AR 10–33.

The ALJ determined that Ms. Gonzalez met the insured status requirements of the Social Security Act through December 31, 2018. AR 15. At step one, the ALJ found that Ms. Gonzalez had not engaged in substantial gainful activity since February 6, 2014, the alleged onset date. *Id*. Because Ms. Gonzalez had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. At step two, the ALJ found that Ms. Gonzalez had the following severe impairments: "cervical degenerative disc disease; left upper extremity tendonitis/bursitis; mild left upper extremity carpal tunnel syndrome (CTS); osteoporosis; osteopenia; and obesity." AR 15 (citations omitted). The ALJ found that Ms. Gonzalez's fibromyalgia, asthma, and depression were non-severe. AR 16. He specifically found that "because the file contains no evidence showing that the claimant's fibromyalgia was diagnosed in accordance with either the *1990 ACR Criteria for the Classification of Fibromyalgia* or the

---

[5] In his decision, the ALJ notes that Ms. Gonzalez applied for DIB and SSI on June 9, 2014. AR 13. The Court presumes this is a typographical error because Ms. Gonzalez's applications are dated June 10, 2014, and July 26, 2014, respectively. AR 203, 207.

4

*2010 ACR Preliminary Diagnostic Criteria*, it cannot be established as a medically determinable impairment." AR 16 (italics in original).

At step three, the ALJ found that none of Ms. Gonzalez's impairments, alone or in combination, met or medically equaled a Listing. AR 17–19. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Gonzalez's RFC. AR 19–24. The ALJ found that:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift 20 pounds occasionally and lift and carry 10 pounds frequently. The claimant could stand and walk up to 6 hours per 8-hour day with intermittent sitting throughout the 8-hour day. The claimant had unlimited use of feet for foot controls. The claimant could push, pull, reach overhead with the right arm and use the right hand for fingering, feeling and handling up to 8 hours per 8-hour day. The claimant could push, pull, reach overhead with the left arm and use the left hand for fingering, feeling and handling up to 6 hours per 8-hour day. The claimant could balance, stoop, kneel, crouch, and crawl up to 6 hours per 8-hour day. The claimant could not ascend/descend ropes, ladders, scaffolds, and stairs. The claimant must avoid concentrated exposure to dust, fumes, gases and odors.

AR 19.

At step four, the ALJ found that Ms. Gonzalez is capable of performing her past relevant work as an inspector and as a customer service representative. AR 24–25. In the alternative, the ALJ found that Ms. Gonzalez was not disabled at step five. Relying on the VE testimony, the ALJ concluded that Ms. Gonzalez still could perform jobs that exist in significant numbers in the national economy—such as cashier, counter clerk, and furniture rental clerk. AR 25–26. Ms. Gonzalez requested review by the Appeals Council, which denied the request on September 11, 2017. AR 1–4, 200–02. Ms. Gonzalez timely filed her appeal to this Court on November 3, 2017. Doc. 1.[6]

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

## IV. Ms. Gonzalez's Claims

Ms. Gonzalez raises six arguments for reversing and remanding this case: (1) the ALJ failed to properly assess her fibromyalgia under SSR 12-2p and, therefore, improperly determined her fibromyalgia was not a medically determinable impairment; (2) the ALJ failed to consider asthma and COPD (chronic obstructive pulmonary disease) as severe impairments; (3) the Court should remand for consideration of new and material evidence; (4) the ALJ failed to develop the record with regard to Ms. Gonzalez's diagnosis of fibromyalgia; (5) the ALJ failed to include moderate exposure to fumes, dust, gasses and odors into Ms. Gonzalez's RFC; and (6) the ALJ failed to properly evaluate the effect of Ms. Gonzalez's obesity in the RFC. Doc. 20 at 13–19. Because I remand based on the ALJ's failure to develop the record with regard to whether Ms. Gonzalez had previously been diagnosed with fibromyalgia, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Discussion

"The burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). "Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is 'responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins*, 113 F.3d at 1164). Generally, this means that the "ALJ has the duty to . . . obtain [ ] pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir.1996). This is true despite the presence of counsel, although the duty is

6

heightened when the claimant is unrepresented. *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993).

The duty is one of inquiry—to inform the ALJ of the relevant facts and to hear the claimant's version of those facts. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993). The length of the hearing is not as relevant as the information gathered. *Thompson*, 987 F.3d at 1492. "The important inquiry is whether [sufficient questions were asked] to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Id.* (internal citation and quotation marks omitted) (brackets in original). The duty to develop the record "is not a panacea for claimants, however, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning." *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). "The standard is one of reasonable good judgment. The duty to develop the record is limited to fully and fairly develop[ing] the record as to material issues." *Hawkins*, 113 F.3d at 1162 (quotations omitted) (brackets in original). "[I]t is not the ALJ's duty, [however], to be the claimant's advocate." *Henrie*, 13 F.3d at 361 (citation omitted). Moreover, in counseled cases—such as this one—"the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting *Hawkins*, 113 F.3d at 1167) (internal quotation marks omitted).

Ms. Gonzalez contends that the ALJ had the duty in this case to inquire about when, where, and how she was diagnosed with fibromyalgia. Doc. 20 at 16–17. Although her counsel

7

failed to raise this issue or produce evidence of Ms. Gonzalez's diagnosis of fibromyalgia, the record demonstrates that Ms. Gonzalez likely was diagnosed with fibromyalgia, and the ALJ had the duty to inquire into whether any such diagnosis existed.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." *Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004) (internal citation omitted). It is a chronic condition, causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue." *Id.* Social Security Ruling 12-2p contains guidelines for evaluating fibromyalgia. The guidelines require the ALJ to follow a two-step process to evaluate a person's statements about his or her symptoms and functional limitations resulting from fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *5. First, there must be medical signs and findings that show the person has a medically determinable impairment which reasonably could be expected to produce the pain or other symptoms alleged. SSR 12-2p, 2012 WL 3104869, at *5. Second, once a medically determinable impairment of fibromyalgia is established, the Commissioner will "then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." *Id*. A person can establish that he or she has a medically determinable impairment of fibromyalgia by providing evidence from an acceptable medical source[7] of a diagnosis of fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2. The Commissioner, however, "cannot rely upon the physician's diagnosis alone." *Id*.

---

[7] Acceptable medical sources generally include licensed physicians, licensed or certified psychologists, optometrists, podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). However, only a licensed physician (a medical or osteopathic doctor) may provide evidence of a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2.

To establish fibromyalgia as a medically-determinable impairment, a physician must diagnose the claimant with fibromyalgia using one of two listed sets of criteria, and the medical evidence must establish that the claimant meets this criteria: the 1990 ACR Criteria for the Classification of Fibromyalgia (the 1990 ACR Criteria); or the 2010 ACR Preliminary Diagnostic Criteria (the 2010 ACR Criteria). *Id.* at *2–*3. Under the 1990 ACR Criteria, the Social Security Administration may find a medically determinable impairment of Fibromyalgia if a claimant can establish (1) a history of widespread pain—that is pain in all four quadrants of the body (including the right and left sides, above and below the waist); (2) at least 11 positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id*. at *2–*3. Under the 2010 ACR Criteria, instead of relying on tender points, a claimant may show that he or she has "[r]epeated manifestations of six or more [fibromyalgia] symptoms[8] . . . , especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id*. (footnotes omitted). But this path does not supersede establishing a diagnosis based on the "tender points" criteria. *See id*. at *2–*3 (noting the ruling "provide[s] two sets of criteria for diagnosing [fibromyalgia]," either of which is sufficient to establish the impairment).

---

[8] Somatic symptoms of fibromyalgia include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. SSR 12-2p, 2012 WL 3104869, at *3 n.9. Other co-occurring conditions include anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id*. at n.10.

Here, the record before the ALJ and the Appeals Council did not establish that a physician had diagnosed Ms. Gonzalez with fibromyalgia.[9] There is, however, overwhelming evidence that Ms. Gonzalez suffers from many of the signs and symptoms of fibromyalgia, and that she was diagnosed with fibromyalgia at some point. The evidence shows that Ms. Gonzalez has repeated manifestations of six or more fibromyalgia symptoms. For example, she suffers from dizziness (AR 341, 370 (vertigo), 433–35, 476, 757), fatigue (AR 341, 349, 367, 373, 456–57, 564, 572, 594, 597 (non-refreshing sleep), 600, 638 (insomnia), 655, 872, 878), body aches and wide spread pain, including pain in her shoulders, legs, neck, ribs, back, and abdomen (AR 341, 349, 352, 363, 365–68, 373, 381–82, 433, 467, 476, 515, 572, 580–81, 711, 713, 718, 725, 727, 732, 738, 872, 874, 876). Ms. Gonzalez suffers from numbness (AR 369, 476, 572, 574, 639, 777, 787, 791), itching (AR 384, 642), and headaches (AR 437, 567, 573, 658). There is also evidence that Ms. Gonzalez experiences wheezing (AR 439, 476, 564, 655), shortness of breath (AR 572, 651, 878), chest pains, and heartburn (476, 583–84, 620, 622, 638, 757, 777). Furthermore, Ms. Gonzalez explained to the state examining doctor that she was diagnosed with fibromyalgia "about two years ago." AR 532. There are notations in the medical records that Ms. Gonzalez reported a history of fibromyalgia. AR 458, 572, 594. At the hearing, Ms. Gonzalez testified that Dr. Walsh treated her for fibromyalgia, suggesting that she had been diagnosed with the disease sometime in the past. AR 42.

---

[9] Ms. Gonzalez presented evidence to this Court that was not presented to the ALJ or the Appeals Council, that a physician has diagnosed her with fibromyalgia. *See* Doc. 1 at 5–6. The Court does not reach the issue of whether there is good cause to consider this medical record as new and material evidence. The Commissioner, however, likely would have obtained this medical record had the ALJ fulfilled his duty of developing the record. Accordingly, on remand, the inquiry into whether Ms. Gonzalez has been diagnosed with fibromyalgia will allow the parties to complete the record with any evidence that supports a diagnosis.

10

Given all of the evidence, it would have been reasonable for the ALJ to inquire whether Ms. Gonzalez had been diagnosed with fibromyalgia, when that diagnosis was made, and by whom. The ALJ did not make this simple inquiry. Instead, the ALJ determined that "because the file contains no evidence showing that the claimant's fibromyalgia was diagnosed in accordance with the *1990 ACR Criteria for the Classification of Fibromyalgia* or the *2010 ACR Preliminary Diagnostic Criteria*, it cannot be established as a medically determinable impairment." AR 16 (italics in original).

The Commissioner argues that the record evidence was sufficient to support the ALJ's determination that Ms. Gonzalez's allegation of fibromyalgia was not a medically determinable impairment. Doc. 22 at 10–11. Specifically, the Commissioner argues that given the evidence, including the expert opinion of Dr. Cochran (the state agency medical consultant)—that there is no medically determinable impairment for fibromyalgia—the ALJ was not required to develop the record further. Doc. 22 at 11 ("Given the dearth of any record evidence supporting Plaintiff's allegation of fibromyalgia and Dr. Cochran's expert opinion that no such evidence existed, the ALJ was not required to develop the record further on this issue."). The Court disagrees. As noted above, there was an abundance of evidence that Ms. Gonzalez suffered from fibromyalgia symptoms. Further, Dr. Cochran determined that "[t]here is no MER (medical evidence of record) for TP (trigger point) exam for FMS (fibromyalgia syndrome) and no MDI (medically determinable impairment)." AR 97. Dr. Cochran's opinion, however, only takes into consideration the 1990 ACR Criteria for the Classification of Fibromyalgia—that requires a trigger point examination—and does not consider the 2010 ACR Preliminary Diagnostic Criteria, which does not require a trigger point examination. Dr. Cochran's opinion does not contain a complete analysis. Dr. Cochran did not consider whether Ms. Gonzalez was diagnosed with

11

fibromyalgia under the 2010 ACR Preliminary Diagnostic Criteria. Consequently, Dr. Cochran's opinion reinforces the need for further inquiry.

The ALJ failed in his duty to develop the record as to the material issue of whether Ms. Gonzalez had a physician's diagnosis of fibromyalgia. Consequently, remand is required on this basis.

**IV.   Conclusion**

For the foregoing reasons, the Court finds that the ALJ failed to properly develop the record and, therefore, the Commissioner's final decision is not supported by substantial evidence.

IT IS THEREFORE ORDERED that Josephine Gonzalez's Motion to Reverse and Remand (Doc. 20) is GRANTED, and this case is remanded to the Commissioner for further proceedings consistent with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent